THEODORE R. GLOVER *vs.* CITY OF BOSTON.

The record of the laying out of streets in South Boston was thus: "The selectmen have determined and agreed to lay out the streets through the whole of said tract now called South Boston, according to a plan" referred to; "the streets agreed upon and laid out are described as follows:" Dorchester Street beginning at the southern edge of the tract, and running half across it to a point from which Broadway extended at an angle eastwardly and westwardly; "to the northward of Broadway, and parallel thereto three streets; on the westerly side of Dorchester Street and southward of Broadway are four streets, running parallel to Broadway, all of them commencing at Dorchester Street, and continuing to the turnpike; on the easterly side of Dorchester Street are six streets lying south of and parallel to Broadway; and it is determined that all the above described streets shall be named and called as follows: The street on the northern shore to be called First Street east and west," &c. "the street next parallel" to Broadway "Fourth Street east and west; the street next parallel Fifth Street east and west;" and so on to "Ninth Street east and west." Upon the plan were two ranges of streets, named Fourth, Fifth, Sixth and Seventh streets, those west of Dorchester Street terminating in it, and those east of Dorchester Street terminating on the west two cross streets east of it; the land between such terminations and Dorchester Street was much higher than the rest of the tract, but was crossed by the intermediate cross street; Eighth Street extended only as far as the street last mentioned, and would not, if extended, have reached Dorchester Street, by reason of a curve in the shore; and Ninth Street was not upon the plan at all. *Held,* that Fifth Street was laid out only so far as was indicated on the plan.

ACTION OF TORT for breaking and entering the plaintiff's close on G Street in South Boston. The parties agreed that the plaintiff was entitled to recover, unless the court should be of opinion that, under *St.* 1803, *c.* 111, entitled "an act to set off the northeast corner of the town of Dorchester, and annex the same to Boston," and the acts and proceedings of the selectmen of Boston pursuant thereto, Fifth Street was laid out from H Street to G Street, as claimed by the defendants.

The material parts of the record of the proceedings of the selectmen, under said statute, at their meeting on the 27th of February 1805, are as follows :

"The selectmen have determined and agreed to lay out the streets through the whole of the said tract now called South Boston, according to a plan drawn by Mather Withington, surveyor, dated October 4, 1804, and signed by him, which plan is preserved among the records of the town of Boston.

" The streets agreed upon and laid out are described as follows:   One principal street to begin on the line which divides South Boston from Dorchester, at the place where the present road over the marsh and causeway crosses said division line, thence running north 63 degrees east, the distance of forty two chains twenty links, being eighty feet wide, and to be called Dorchester Street.

" From the northerly end of said Dorchester Street, another principal street, to run southerly 84½ degrees east to the sea or salt water, and northerly 24 degrees west, until it meets the line of the turnpike, the above described street to be 80 feet wide, and to be called Broadway.

" Also to the northward of Broadway, and parallel thereto, three streets, all of them 50 feet wide," the distances between which on each branch of Broadway are specified.

" Also on the westerly side of Dorchester Street and southward of Broadway are four streets, each 50 feet wide, running parallel to Broadway, all of them commencing at Dorchester Street and continuing to the turnpike, thence bending in a direction parallel with the line of South Boston Bridge to the sea."

" On the easterly side of Dorchester Street, besides the streets above described, are six streets, lying south of Broadway, all of them 50 feet wide, and parallel to Broadway."

" And it is determined that all the above described streets shall be named and called as follows :

" The street on the northern shore in Boston Harbor to be called                                        First Street    E. and W.

" The street next parallel thereto Second Street      "
" The street next parallel         Third Street       "
" The street next parallel         Broadway      .    "
" The street next parallel         Fourth Street      "
" The street next parallel         Fifth Street       "
And so on to                      Ninth Street        "

" The cross streets upon the said tract are described as " six streets " west of Dorchester Street, all at right angles with West Broadway," and all of them running from the boundary line to the sea.

" Also on the easterly side of Dorchester Street are ten cross streets," " at right angles with East Broadway, all of them running from the salt water on the south to the Harbor of Boston on the north of said tract, and described as follows : The first street east of Dorchester Street is laid out so that the division line between land of Champney and land of Jonathan Bird shall be in the direction of the middle of said street," and the others at certain distances to the east.

" Also one other cross street in the same direction as the above, laid out equally on each side of the line which divides the land of      Champney from land of Thomas Bird's heirs and of the widow Mary Clap, said streets being 50 feet wide. Also one other street leading from the south end of Dorchester Street at right angles with the last mentioned street and terminating in the same.

" And it is determined by the selectmen that the cross streets above described shall be known and designated by the letters of the alphabet, as follows : Beginning at the most easterly cross street, which shall be called A Street," &c.   " The first street east of Dorchester Street to be called G Street," &c.

The following is a copy of so much of Mather Withington's plan as is necessary to the understanding of this case :

The highest parts of the two elevations of land, known as
Dorchester Heights, are situated between East Broadway, East
Dorchester Street, Old Harbor Street, Eighth Street, and H
Street, as laid down on said plan, the highest point of said
Dorchester Heights being about one hundred and twenty feet
above high water mark; and the point of intersection of G
Street with the extension of Fifth Street, as claimed by the
defendants, is seventy seven and a half feet above high water
mark.

*W. S. Leland & G. Morrill,* for the plaintiff.

*J. P. Healy,* (City Solicitor,) for the defendant, cited *Henshaw*
v. *Hunting,* 1 Gray, 203.

This case was decided in June 1860.

HOAR, J.   The single question presented in this case is whether,
under the proceedings of the selectmen of Boston on the 27th
of February 1805, in laying out streets in South Boston, con-
sidered in connection with the plan of Mather Withington
referred to in the record of those proceedings, the street called
Fifth Street extends westwardly from H Street to G Street.

It cannot be necessary, in order to decide this question, to pre-·
sent in detail all the considerations applicable to the subject of
the original laying out of the streets in that part of Boston.
That whole subject has been most fully and elaborately exam-
ined, and the principles and rules relating to it clearly stated, in
a series of cases, to which it is only necessary to refer.   *Com-
monwealth* v. *Boston,* 16 Pick. 442.   *Wright* v. *Tukey,* 3 Cush.
290.   *Bowman* v. *Boston,* 5 Cush. 1.   *Fernald* v. *Boston,* 12
Cush. 574.   *Henshaw* v. *Hunting,* 1 Gray, 203.

It is conceded on both sides that if, from the record of the
selectmen of Boston of February 27th 1805, in connection with
Mather Withington's plan, it appears that they intended to ex-
tend Fifth Street from H Street to G Street, then the defend-
ants are entitled to judgment.   And it has been held in former
cases, that if, taking the whole together— that is, the description
in the record and the delineation on the plan — the streets in-
tended can be identified and drawn on the ground, misdescrip-
tion will not avoid or vitiate the laying out of the way, any

more than what is called *falsa demonstratio* in a deed. *Wright v. Tukey* and *Henshaw* v. *Hunting*, above cited.

On looking at the copy of the plan, it appears that the whole range of streets, from East Broadway to Eighth Street, including Fourth, Fifth, Sixth and Seventh Streets, terminate at H Street on the west, as there marked out; and it becomes necessary therefore to look into the whole record, to see if it was intended to lay them out any farther.

The parts of the record upon which the defendants chiefly rely are, first, the statement that " the selectmen have determined and agreed to lay out the streets through the whole of the said tract now called South Boston, according to a plan drawn by Mather Withington; " and secondly, that Fifth Street in its whole extent, is described as " the street next parallel, Fifth Street, east and west," a description applicable to a single continuous street; while, if the eastern section should be held to terminate at H Street, it would consist of two streets, not connecting with each other, though called by the same name. If there were nothing else in the record to control or vary the inference to be drawn from these facts, they might perhaps be regarded as decisive; but there are some considerations which render it at least doubtful whether any farther extension of the street than that which the plan represents was ever intended.

The streets north of Broadway are described as three streets parallel thereto, and, being described as parallel to both parts of Broadway, of course have an angle corresponding to that in Broadway. Their location is carefully defined, but they are spoken of as three streets, and called First, Second and Third Streets. But on the south side of Broadway there are two groups or ranges of streets, whose location is separately given. The first, which is west of Dorchester Street, consists of four streets parallel with Broadway, " all of them commencing at Dorchester Street and continuing to the turnpike." The other, on the easterly side of Dorchester Street, consists of six streets, which are also parallel with Broadway, and their distances from it are given, but they are not said to commence at Dorchester Street. On the plan, the first four of them are delineated as only

extending to H Street; Eighth Street is laid down as extending to Old Harbor Street, and would not, if extended, reach Dorchester Street; and Ninth Street, which would be the street next the water, and would be interrupted, unless the flats were filled up, by the curvature of the shore, is not laid down at all. It is obvious therefore that some of this second range of streets were not intended and could not be made to reach Dorchester Street. They are all described together, and their western termination is not given, except as it appears on the plan. Sixth Street, if continued, would nearly or quite run into Telegraph Street.

There seem to have been good reasons why these streets should have been laid out on a separate arrangement, and not made to extend so as to connect with the streets of the same name on the west of Dorchester Street. Each of them is indeed spoken of as extending east and west by the same name. But this is clearly inadvertent as to a part of them, which have no western extension, and could not be made to have any; and this diminishes the force of the argument as applied to the rest.

The argument that unless Fifth Street is taken to be continuous from one end of the territory to the other, the selectmen did not lay out streets " through the whole of said tract," which the record declares to have been their purpose, has its force impaired by the consideration that neither Dorchester Street, which is the base line of the whole plan, nor Old Harbor Street, nor Telegraph Street, extends across the whole tract.

It was argued on behalf of the defendants that Fourth Street, Fifth Street, Sixth Street and Seventh Street, east of Dorchester street, were not laid down on the plan beyond H Street, because the territory in question was a peak of land so high that the surveyors could not easily pass over it; and that the streets were not drawn upon the plan in such places as were inaccessible by water or other causes. But on the other hand, G Street, which runs over the same peak, is laid down upon the plan; and there seems at this part of the territory to have been a design to make streets conform to certain dividing lines between adjacent proprietors, which did not apply elsewhere.

The court are thus brought to the conclusion, upon all the facts presented, that Fifth Street was not intended to extend from H Street to Dorchester Street. Upon the record of the laying out alone, it must at best be regarded as extremely doubtful; and the plan excludes it altogether. The appropriation of private property to the public use, which is one of the highest acts of sovereign power, should not be accomplished by the use of ambiguous or uncertain language. The presumption is in favor of the owner of the land, and any act done by public authority which interferes with his rights should be, as it always may be, clear and intelligible.                    *Judgment for the plaintiff.*